UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TOMGAL LLC D/B/A ROBIN RUTH *et al.*,

                       Plaintiffs,                                **ORDER**

           -against-                        **22-CV-9516 (JGK) (JW)**

CASTANO *et al.*,

                       Defendants.
------------------------------------------------------------------X

**JENNIFER E. WILLIS, United States Magistrate Judge:**

On May 20th, Defendants sought a conference to discuss several discovery disputes. Dkt. No. 59. Plaintiffs responded that they adequately complied with all outstanding discovery requests. Dkt. No. 60. Moreover, Plaintiffs assert it is the Defendants that have been derelict in their discovery duties. Id. Defendants countered that they are still waiting on documents and for the Plaintiffs to comply with formatting specifications. Dkt. No. 62. Defendants then sought an extension of the discovery deadline, previously set for June 13th. Id. at 2.

The discovery deadline was extended to June 26th, and in a previous Order, the Court stated it would "determine whether another extension is necessary" at the discovery conference. Dkt. No. 63. The Court held a Local Rule 37.2 conference on June 26th. Dkt. No. 67.

At the conference, the Parties discussed both the Plaintiffs' and the Defendants' alleged discovery deficiencies. The Parties resolved several issues, but some discovery remains outstanding. Therefore, to begin, **the discovery deadline is extended to October 1st**. **The Parties shall jointly file a letter updating the**

**Court on the status of the case by that date**. Should additional extensions become warranted, the Parties may jointly request an extension then.

## I. Defendants' Discovery Issues

### A. Nine Categories of General Deficiencies

In their letter, the Defendants identify nine categories of requested information that they allege Plaintiff has not adequately produced. These nine categories are: (1) Defendants' possession and use of Plaintiffs' alleged trade secrets (2) The extensive research and development employed by Plaintiffs in identifying distributors who possess specific abilities that are critical to Robin Ruth's success (3) Plaintiffs' assertion that Robin Ruth has "curated a methodology"—that has cost Plaintiffs millions of dollars to date and requires a continuous investment of time and resources—which allows them to ascertain which products will be the most successful in certain markets (4) Which Robin Ruth employees were directly involved in the product testing methodology (5) Plaintiffs' "novel" pricing structure (6) Plaintiffs' assertion that Castano used any of Plaintiffs' trade secrets (7) Plaintiffs' assertion that Castano, through Fashion Code, utilized a uniform product code (UPC) registered in Plaintiffs' name to place items in retail stores (8) Plaintiffs' assertion that Fashion Code was able to bypass consumer safety and quality testing that is typically required of all suppliers; (9) Plaintiffs' assertion that Castano actively sought to ruin the relationships Robin Ruth has with its distributors and retailers, including by implying to Robin Ruth distributors that the company is cheating them in an attempt to sell Defendants' own products. See Dkt. No. 65 at 2.

Plaintiffs counter that Defendants "can explore" these issues "during depositions." Dkt. No. 65. When the Court asked the Defendant, "it appears from the joint letter that their response in part to this is, 'we've given you all the responsive documents, and that to the extent that you're not able to glean from what they've given you what the trade secret is, that that might more properly be something to explore through depositions…what is your response to that?" Dkt. No. 68 at 6. Counsel for Defendants responded, "that's literally our argument…" Dkt. No. 68 at 6.

Thus, so long as Defendants are permitted an opportunity for post-deposition document discovery, conducting the depositions first will likely focus document discovery without prejudicing the Defendants. **Therefore, by September 6th, the Parties shall confer and jointly file a proposed schedule for completing the requested depositions**.

The Court notes that as each of the above nine categories of information are relevant, the witnesses may be asked questions on each of the topics. Moreover, following those depositions, if further document discovery is required, the Parties can seek leave of the Court to do so. If, after that post-deposition document discovery, a second deposition becomes necessary, the Parties may seek leave of the Court to conduct a second round of depositions. Going forward, the Parties should endeavor to structure the sequence of the depositions and document discovery to reduce total costs.

**B. Financial Materials**

3

Defendants claim that Plaintiffs have not produced responsive financial documents: "including state and federal tax returns, with all attachments, worksheets, schedules and supporting documentation, for tax years 2019 to the present." Dkt. No. 65 at 9. Defendants claim that the financial documents, "are critical to the analysis and calculation of Plaintiffs' alleged damages." Id. On the other hand, Plaintiffs claim, "Defendants' request for Plaintiffs' tax returns is irrelevant and inappropriate, as the documents produced provide the financial information that assists in calculating Plaintiffs' damages." Dkt. No. 65 at 7.

With respect to the requested tax returns, "even when tax returns and income information are relevant" the requesting party must establish a "compelling need" for the documents. See Trustees of the Local 854 Pension Fund et al v. Barrett et al (23-cv-1160) (citing Sadofsky v. Fiesta Products, No. 06-CV-6533 (ADS)(ETB),252 F.R.D. 143, 149-51 (E.D.N.Y. 2008); Malinowski v. Wall St. Source, Inc., 09-CV-9592 (JGK)(JLC), 2011 WL 1226283 (S.D.N.Y. March 18, 2011); A.F.L. Falck S.p.A. v. E.A. Karay Co., Inc., 131 F.R.D. 46, 48 (S.D.N.Y. 1990). If a party "can readily obtain the information from a less intrusive source, the Party seeking the discovery has not established that there is a compelling need." Id. Other paths for securing this information have yet to be exhausted. The Defendants should first pursue other avenues of discovery before seeking the tax documents. **Thus, at this time, the request for the tax documents is denied without prejudice.**

Turning next to the other requested financial documents, at the conference, Plaintiffs represented (apparently for the first time) that they are only pursuing lost

4

profits related to the alleged tortious interference in Puerto Rico. With respect to the other territories, as explained by Plaintiff's counsel, the "measure of damages in…the case that we brought, is the sales that [Defendant] conducted during that year, not necessarily the sales that we lost." Dkt. No. 68 at 49.

The Court clarified, "So your argument is that you are not seeking damages that…would be characterized as lost profits, other than with respect to the tortious interference claim. Is that what we're saying?" Dkt. No. 68 at 52. Plaintiffs' counsel affirmed that this understanding was "correct. Your Honor understands what we're looking for as far as our world of damages." Dkt. No. 68 at 53. Defendant said, "if they're willing to enter into some written thing that I can rely on…that I'm not ambushed at trial, right, as to what their damages are…I'd agree." Dkt. No. 56.

Plaintiff thus proposed providing for all territories "the backup…for October 2021 to October 2022. We could provide the backup surrounding the invoices for that year. And we can also provide the backup of documents…from 2017 until the relationship ended with the Puerto Rico distributor." Dkt. No. 68 at 46.

Therefore, as the Plaintiff has represented that its only measure of damages relating to lost profits is for the Puerto Rico distributor, Defendant does not need financial data for every other location outside the restricted period of 2021-2022. **Thus, the Defendant shall produce the backup financial documents for all locations but only for the period October 1, 2021 to October 31, 2022.** But Plaintiff shall also provide the underlying financial documents **for the Puerto Rico distributor from 2017 through 2022**.

5

Finally, Defendant requested the identity of all of Plaintiffs' manufacturers and distributors. While Plaintiffs said that they do not have a list of all the various vendors, **Plaintiffs shall provide Defendants with a single invoice for each distributor and manufacturer**. See generally Dkt. No. 68 at 23. Those invoices must contain adequate identifying information for each **distributor and manufacturer**. Following the depositions, should further post-deposition document discovery be required, Defendants may seek additional documents at that time.

**C. Plaintiffs Have Refused to Schedule Any Depositions or Produce Any Documents on Behalf of The Third Parties That Their Counsel Represent**

Defendants claim that Plaintiffs' counsel is representing numerous third parties subpoenaed for documents but he has not responded to those subpoenas. Defendants also claim Plaintiffs have refused to schedule any depositions. Dkt. No. 65 at 3. Plaintiffs claim, "Plaintiffs communicated their position that they would not be scheduling depositions prior to Defendants' remedying their deficient production." Dkt. No. 65 at 8. At the conference, Plaintiffs said, "what we would like to do is first complete first-party discovery." Dkt. No. 68 at 74.

But Plaintiff "has no right to insist on a particular sequence of discovery." See Baez et al v. Pizza On Stone LLC et al No. 21-cv-9714, Dkt. No. 91 at 2 (June 28, 2024); see also Fed. R. Civ. P. 26(d)(3). Moreover, the June 6th Order stated, "Discovery is not stayed in the interim" and "the Parties shall continue to work in good faith to resolve any remaining discovery deficiencies." **Therefore, the Parties shall confer and, by September 6th, propose a schedule for completing the**

6

**depositions and providing the documents sought in the third-party subpoenas**.

### D. Metadata

Defendants claim that "Plaintiffs' initial production was produced in bulk PDF format and their documents were stripped of all metadata. Notwithstanding Plaintiffs' clear promises to correct those productions, Plaintiffs have not done so to date." Dkt. No. 65 at 4. On the other hand, Plaintiffs claim "all emails, attachments, and excel documents were produced in their native format with the required metadata." Dkt. No. 65 at 8.

At the conference, the Parties debated whether all requested documents had been provided in the proper format that would allow Defendants access to the metadata. Counsel for Plaintiffs said, "to the extent there are particular documents they claim they don't have metadata for, we will look into that." Dkt. No. 68 at 68.

**Therefore, the Parties shall confer and, by September 6th, jointly propose a deadline to complete the production of the requested documents in the proper format with the metadata.**

### II. Plaintiffs' Issues & Defendants' Responses

Plaintiffs claim that "Defendants have failed to produce the most basic discovery surrounding their business. At this juncture, Plaintiffs assume that Defendants either destroyed evidence or are intentionally refusing to produce communications and documents surrounding their business operations…third-party discovery subpoenas productions continue to confirm that Defendants are in fact

7

withholding documents." Dkt., No. 65 at 5. Plaintiffs assert that "Defendants' production does not include a single document evidencing the establishment of a business relationship." Id. Plaintiffs point to a third-party production from Zizo USA, Inc., one of Defendants' distributors, which "revealed that there were several documents and communications that were withheld from Defendants' production. Specifically, the production included a total of 22 documents responsive to Plaintiffs' discovery requests to Defendants, including multiple communications between Defendants and Zizo, that were nevertheless absent from Defendants' production." Dkt. No. 65 at 6.

Defendants counter that they "are looking into the so-called deficiencies raised by Plaintiffs to determine if any additional documents can be located…we will endeavor to respond as quickly as possible." Dkt. No. 65 at 4. Similarly, at the conference, the Defendants' counsel said, "Your Honor, pure and simple, a lot of what they're asking for is relevant. A lot of what they're asking for they've received. We will redouble efforts. If there's things we haven't produced, we will produce them." Dkt. No. 68 at 81.

**Therefore, the Parties shall confer and, by September 6th, jointly propose a deadline to complete the production of these requested documents.**

SO ORDERED.

DATED:   New York, New York
         August 20, 2024

8

*Jennifer E. Willis*
_____
JENNIFER E. WILLIS
United States Magistrate Judge